UNITED STATED DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JODY D. SHOCKLEY,<br><br>        Plaintiff,<br><br>        v.<br><br>JO ANNE B BARNHART,<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____ | ) NO.  CV-04-0342-AAM<br>)<br>)<br>)<br>)<br>) **ORDER GRANTING DEFENDANT'S**<br>) **MOTION FOR SUMMARY**<br>) **JUDGMENT,** *INTER ALIA*<br>)<br>)<br>) |

        BEFORE THE COURT are cross-motions for Summary Judgment (Ct. Rec. 11, 15).  Maureen Rosette represents Jody D. Shockley (Plaintiff); Pamela Derusha, Chief Civil Assistant U.S. Attorney and Leisa A. Wolf, Special Assistant United States Attorney, represent the Commissioner of the Social Security Administration (Defendant).  After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's motion for summary judgment (Ct. Rec. 11) and **GRANTS** Defendant's motion for summary judgment (Ct. Rec. 15).

## I.  JURISDICTION

        On June 26, 2000, Plaintiff filed for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.  (Tr. 83-86.)  Alleging an onset date of April 1, 1993, he claimed disability due to hypothyroidism, gout, arthritis, chronic fatigue, anemia, headaches, and reflux disease.  (Tr. 90).  His application was denied initially and on reconsideration.  (Tr. 38, 44.)  He requested a hearing before an Administrative

Law Judge (ALJ), which was held on January 24, 2002, before ALJ Paul Gaugen. (Tr. 47-48, 350-382). Plaintiff, who was represented by an attorney, and vocational expert Thomas Moreland testified at this hearing. The ALJ determined that additional evidence was needed and another hearing was held on March 11, 2003. (Tr. 381, 383-406). Plaintiff, Mr. Moreland and medical expert Robert Klein, Ph.D. testified at this hearing.

The ALJ issued his decision on May 16, 2003, and found Plaintiff not disabled at any time through the date of his decision. (Tr. 18-27). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final Agency decision. (Tr. 6-8). This matter is before the district court pursuant to 42 U.S.C. § 405(g).

## II. SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520,[1] 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

---

[1] Certain sections of 20 C.F.R. addressing Title II and Title XVI benefits have been amended. 68 F.R. 51153. The amendments are applicable to administrative decisions dated on or after September 25, 2003. 68 F.R. 51159. Accordingly, the amendments are not applicable here. Any reference to C.F.R. sections in this opinion is pre-amendment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA***          2

Step 1:  Is the claimant engaged in substantial gainful activities?  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is, benefits are denied.  If he is not, the decision maker proceeds to step two.

Step 2:  Does the claimant have a medically severe impairment or combination of impairments?  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step.

Step 3:  Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity?  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4:  Does the impairment prevent the claimant from performing work he has performed in the past?  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant is able to perform his previous work, he is not disabled.  If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step 5:  Is the claimant able to perform other work in the national economy in view of his age, education and work experience?  20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the plaintiff to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

/ / /

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA***          3

1

## III.  STANDARD OF REVIEW

2      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) the court set out the

3  standard of review:

4          A district court's order upholding the Commissioner's denial of
   benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th
5      Cir. 2000). The decision of the Commissioner may be reversed only if it is
   not supported by substantial evidence or if it is based on legal error. *Tackett*
6      *v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is
   defined as being more than a mere scintilla, but less than a preponderance.
7      *Id.* at 1098. Put another way, substantial evidence is such relevant evidence
   as a reasonable mind might accept as adequate to support a conclusion.
8      *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is
   susceptible to more than one rational interpretation, the court may not
9      substitute its judgment for that of the Commissioner. *Morgan v.*
   *Commissioner of Social Security*, 169 F.3d 595, 599 (9th Cir. 1999).
10         The ALJ is responsible for determining credibility, resolving
   conflicts in medical testimony, and resolving ambiguities. *Andrews v.*
11     *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of
   law are reviewed *de novo*, although deference is owed to a reasonable
12     construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084,
   1087 (9th Cir. 2000).

13

## IV.  STATEMENT OF THE CASE

14

15     The facts of the case are set forth in the transcript and the ALJ's decision and will

16  be summarized briefly here.  Plaintiff was 28 at the time of the first hearing and had a

17  high school education.  (Tr. 357).  He was 5'10" and weighed 360 pounds.  (Tr. 357).

18  He has worked as an almond huller, an iron worker and a laborer on a dairy farm.  (Tr.

19  359-60).  He was not married and had no children.  (Tr. 357).  His sole source of

20  income at the time of the hearing was public assistance.  (Tr. 371-72).

21     Plaintiff testified he spends most of his days sleeping, watching television and

22  playing video games.  (Tr. 369).  He stated he cooks sometimes and takes out the

23  garbage but is not able to do other household chores.  (Tr. 367-68).  He testified he does

24  not drive and does not have a driver's license.  (Tr. 368-69).  He testified that he could

25  stand for no more than 30 minutes, walk for about two blocks, and sit for only 15 to 20

26  minutes before he got tired or started hurting.  (Tr. 363-64).  He stated he could lift

27  about 10 pounds.  (Tr. 366).  Plaintiff was taking allopurinol for his gout, Levoxyl for

28  his hypothyroidism, and heartburn and pain medication.  (Tr. 388-89).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT, *INTER ALIA***          4

1

## V.  ADMINISTRATIVE DECISION

2        At step one, the ALJ found Plaintiff had not engaged in substantial gainful
3   activity since the alleged onset of disability.  (Tr. 26).  At step two, he found Plaintiff
4   did not suffer from a severe mental impairment, but had severe physical impairments of
5   tophaceous gout with intermittent, but not frequent, flare-ups, and morbid obesity.  He
6   found these physical impairments were not severe enough to meet or equal one of the
7   impairments listed in Appendix 1, Subpart P of the Regulations.  (Tr. 23).  The ALJ
8   found Plaintiff's testimony at the hearing regarding his limitations was not entirely
9   credible.  (*Id.*)  At step four, he found Plaintiff had no past relevant work and the
10  residual functional capacity to perform a significant range of sedentary work "with the
11  option to alternate sitting/standing, as often as every 30 minutes, subject to no complex
12  reading or writing tasks."  (Tr. 26).  He further found that Plaintiff was limited to simple
13  instructions (no detailed or complex instructions) and that he could not respond or adapt
14  to frequent changes in work routine.  (*Id.*)  Using the Grids [2] as a framework and the
15  testimony of the vocational expert, the ALJ found Plaintiff could perform a significant
16  number of sedentary jobs in the national economy and, thus, was not under a
17  "disability" as defined by the Social Security Act at any time through the date of his
18  decision.  (Tr. 27).

19                                    ## VI.  ISSUES

20        Plaintiff contends the ALJ's decision is not supported by substantial evidence and
21  is tainted by legal error.  Specifically, he argues that the ALJ erred when he relied upon
22  the medical expert testimony and improperly rejected the medical opinions of examining
23  psychologist, Dr. Pollack.  He further argues that his pain and symptom testimony was
24  improperly rejected.  (Ct. Rec. 12, p. 11, 13).

25        / / /

26        / / /

27   _____

28        [2]  Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY**
**JUDGMENT, *INTER ALIA***          5

## VII.  DISCUSSION

**A.    Conflicting Medical Evidence of Mental Impairment**

Plaintiff argues that medical evidence establishes a severe mental impairment that precludes his ability to work in the national economy.  (Ct. Rec. 12, p. 14).  An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521.  To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908.  However, an overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled.  *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994).  Thus, the Commissioner has passed regulations which guide dismissal of claims at step two.

The Regulations state an impairment may be found to be "not severe" only when evidence establishes a "slight abnormality" on an individual's ability to work.  *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling 85-28).  The ALJ must consider the combined effect of all of the claimant's impairments on the ability to function, without regard to whether each alone was sufficiently severe.  *See* 42 U.S.C. § 423(d)(2)(B)(Supp. III 1991).  The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims.  *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

The initial burden to establish a severe impairment is on the claimant, who must provide medical evidence showing he has an impairment and how severe it is during the time he says he is disabled.  20 C.F.R. § 404.1512(c).

Plaintiff submitted psychological evaluations from examining psychologists Jerry Larson, Ph.D., Thomas McKnight, Ph.D., and Dennis R. Pollack, Ph.D.  (Tr. 188, 246, 289).  Also submitted were the psychiatric review technique form (PRTF) and mental residual functional capacity (RFC) assessment completed by reviewing state agency

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT, *INTER ALIA***                    6

1  psychologist Michael Brown, Ph.D.  (Tr. 251, 265).

2      Dr. Larson examined Plaintiff on June 13, 2000, administered a TOPS Personality

3  Inventory (an intelligence test) and conducted a clinical interview.  He concluded

4  Plaintiff had an overall IQ of 88 and diagnosed a generalized anxiety disorder with mild

5  paranoia.  He assessed Plaintiff with a Global Assessment of Functioning (GAF) score

6  of 55-60 (moderate). [3]  (Tr. 188-89).  Dr. McKnight evaluated Plaintiff on November 9,

7  2000.  His evaluation consisted of objective testing with the third edition of the

8  Wechsler Adult Intelligence Scale (WAIS-III), a review of medical records (including

9  Dr. Larson's report) and a mental status examination.  (Tr. 246-47, 249).  Dr. McKnight

10  concluded Plaintiff had a full scale IQ of 81, with a verbal and performance scores of

11  83, a working memory index score of 82, and a verbal comprehension index score of 89.

12  (Tr. 249).  He opined Plaintiff was functioning within the upper limits of the borderline

13  range of measured intellectual ability, with a fund of knowledge "greater than

14  expected," probably due to Plaintiff's television watching.   (Tr. 250).  He found no

15  Axis I diagnosis, an Axis II diagnosis of borderline intellectual functioning,

16  psychosocial and environmental problems, and a GAF score of 65-70 (mild).  (*Id.*)  Dr.

17  McKnight concluded that there were "no psychological factors that preclude this

18  individual from full time gainful employment involving a 2-3 step repetitive tasks."  (Tr.

19  246, 50).

20      State agency psychologist Dr. Brown reviewed the records, and completed  the

21

22  _____

23     [3]  The GAF scale is a common tool for tracking and evaluating the overall
psychological functioning of a patient.  A score of 51-60 indicates "moderate symptoms

24  (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate
difficulty in social, occupational, or school functioning (e.g., no friends, unable to keep

25  a job)."  A score of 61-70 indicates "some mild symptoms, (e.g., depressed mood and
mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g.,

26  occasional truancy, or theft within the household), but generally functioning pretty well,

27  has some meaningful interpersonal relationships."  *Diagnostic and Statistical Manual of

28  Mental Disorders, Fourth Edition* (*DSM-IV*), at 32 (1995).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT, *INTER ALIA***     7

PRTF on December 2, 2000. (Tr. 251-267). He determined Plaintiff had a generalized anxiety impairment by history and borderline intelligence characterized by mild limitations in activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace. He found no episodes of decompensation. (Tr. 251, 261). Dr. Brown determined a mental RFC was necessary, the results of which revealed no significant limitations in 14 out of 20 categories. He found Plaintiff was moderately limited in his ability to: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public (due to his borderline intelligence); respond to changes in the work place; and set realistic goals or make plans independently of others. (Tr. 265-67). He found no marked limitations in Plaintiff's mental functioning capacities.

Dr. Pollack examined Plaintiff on January 10 and 17, 2002. He administered the Minnesota Multiphasic Personality Inventory-II (MMPI-II), the Millon Clinical Multi-Axial Inventory-III (MCMI-III) and the WAIS, reviewed medical records (including reports from Dr. McKnight and Dr. Larson), and conducted a client interview. (Tr. 289-92). He diagnosed an Axis I reading disorder and disorder of written expression and an Axis II personality disorder, nos. (Tr. 294).

Based on the objective testing, Dr. Pollack opined Plaintiff had a full scale IQ of 87, a verbal IQ of 86 and a performance IQ of 93. (Tr. 292). In his medical source statement (Ability To Do Work-Related Mental Activities) Dr. Pollack concluded Plaintiff had a "fair" ability (satisfactory some of the time) to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; complete a normal workday/week; interact with the public; and get along with co-workers and peers. (Tr. 295-96). He opined Plaintiff had "no useful ability" to accept instructions and criticism from supervisors. (Tr. 296). Plaintiff's other work related abilities were rated "good" or "excellent." (Tr. 295-96).

Dr. Pollack completed a second assessment form (Work Related Temperaments) which indicated moderate limits in Plaintiff's adaptability in making generalizations and

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA***            8

1   decisions based on sensory or judgmental criteria; dealing with people beyond giving

2   and receiving instructions; performing under stress in jobs requiring speed and sustained

3   attention; and multi-tasking without loss of efficiency or composure.  Other adaptability

4   limits were rated "none" to "slight."  (Tr. 297).  In his narrative report, Dr. Pollack

5   reported that Plaintiff admitted to having an explosive temper in the past.  (Tr. 290).  Dr.

6   Pollack observed that test results indicated significant depression, but Plaintiff's

7   presentation did not reflect this.  (Tr. 294).

8        At the first hearing, the ALJ concluded that the disparity in the psychological

9   reports required the assistance of a medical advisor and/or follow up with the medical

10  sources.  (Tr. 380-82).  The analysis and opinion of an expert selected by an ALJ may

11  be helpful in adjudication, and the court should not second guess the ALJ's resolution of

12  conflicting medical testimony as long as the determination is based on substantial

13  evidence.  *Andrews,* 53 F.3d at 1041, (*citing Magallanes v. Bowen*, 881 F.2d 747, 753

14  (9th Cir. 1989)).  Testimony of the medical expert may serve as substantial evidence

15  when supported by other evidence in the record. *Id.*  Courts have upheld an ALJ's

16  decision to reject the opinion of an examining physician based in part on the testimony

17  of a non-examining medical advisor.  *Lester*, 81 F.3d at 831.  If supported by substantial

18  evidence, the ALJ's decision must be upheld, even where the evidence is susceptible to

19  more than one rational interpretation.  *Andrews,* 53 F.3d at 1039-40.

20       Medical expert Ronald Klein, Ph.D. testified at the second hearing.  (Tr. 390-94).

21  The ALJ found his testimony and Dr. McKnight's report to be persuasive and found no

22  severe, medically determinable mental impairment.  (Tr. 22).  He gave Dr. Pollack's

23  report little weight because the findings were not supported by Dr. Klein's testimony

24  and other evidence in the record.  (*Id.*)  Plaintiff argues that Dr. Pollack's evaluation

25  should have been given controlling weight because he was the only psychologist who

26  actually examined prior medical records, conducted a patient interview, and

27  administered objective tests.  (Ct. Rec. 12, p. 12).  However, the record indicates that

28  Dr. McKnight reviewed some prior medical records, interviewed the Plaintiff and

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY**
**JUDGMENT,** *INTER ALIA*                    9

1   administered the WAIS intelligence test. (Tr. 246, 249).

2          In disability proceedings, the ALJ must provide 'clear and convincing' reasons

3   for rejecting the uncontradicted opinion of an examining physician." *Lester v. Chater*,

4   81 F.3d 821, 830 (9th Cir. 1995) (*citation omitted*).  If the opinion is contradicted, it can

5   only be rejected for specific and legitimate reasons that are supported by substantial

6   evidence in the record.  *Andrews*, 53 F.3d at 1043.  To meet this burden, the ALJ can

7   set out a detailed and thorough summary of the facts and conflicting clinical evidence,

8   state his interpretation of the evidence, and make findings.  *Thomas  v. Barnhart,*  278

9   F.3d  947, 957(9th Cir. 2002) (*citing Magallanes*, 881 F.2d at 751).  Historically, the

10  courts have recognized conflicting medical evidence, the absence of regular medical

11  treatment during the alleged period of disability, and the lack of medical support for

12  doctors' reports based substantially on a claimant's unreliable, subjective complaints of

13  pain as specific, legitimate reasons for disregarding the treating or examining

14  physician's opinion.  *Flaten v. Sec. of Health and Human Services*, 44 F.3d 1453, 1463-

15  64 (9th Cir. 1995); *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989).

16         The regulations provide that the ALJ must carefully consider all medical source

17  opinions and consider the opinions therein and its consistency with the record as a

18  whole.  SSR 96-5p.  While it is true that Dr. Pollack is the only psychologist who

19  administered personality testing, no one examining medical source is entitled to

20  controlling weight on the existence of an impairment or the ultimate issue of disability.

21  *Batson v. Commissioner of Social Security Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004).

22  Where medical reports are conflicting or inconclusive, "questions of credibility and

23  resolution of conflicts in the testimony are functions solely of the Secretary."  *Morgan*,

24  169 F.3d at 600 (*citing Sample v. Schweiker*, 694 F.2d 639, 642 (1982).  Further, the

25  ALJ may draw inferences logically flowing from the evidence.  *Sample*, 694 F.2d at

26  642.  The ALJ is responsible for resolving conflicts and ambiguities in the medical

27  evidence, and the court will uphold his determinations, even if there is more than one

28  rational interpretation.  *Id.*

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY**
**JUDGMENT, *INTER ALIA***          10

1    As discussed above, to satisfy his step two burden, the Plaintiff must present

2    medical evidence establishing the mental impairment.  20 C.F.R. § 416.908.  Dr. Klein

3    testified that, based on the entire record, it was his opinion that Plaintiff had no *DSM-IV*

4    diagnoses.  (Tr. 390).  He supported this opinion by reference to evidence in the entire

5    record, not just one evaluation.  He stated that "borderline level of intellectual function

6    starts at an IQ of 79 working down to an IQ of 70." [4]  (Tr. 391).  Dr. Klein opined that

7    Plaintiff's scores placed him in the "low normal range" of intelligence.  (*Id.*)  Dr.

8    Pollack, whose full scale IQ score (87) was notably higher than Dr. McKnight's, also

9    assessed Plaintiff within the low range of average intelligence, as did Dr. Larson.  (Tr.

10   189, 292).  Thus, the weight of the evidence supports the ALJ's finding of no severe

11   mental impairment of borderline intellectual functioning. [5]

12         Regarding the personality testing, Dr. Klein acknowledged that Plaintiff's results

13   revealed abnormal thinking patterns, but he did not believe a diagnosis could be based

14   on MMPI scores alone.  (Tr. 393).  He opined the results indicated an individual with

15   certain personality traits, such as preoccupation with thought process and physical

16   function, an individual who is "rather depressed and withdrawn," but noted that the

17   record did not include any treatment with psychiatric medication.  (Tr. 393-94).  Dr.

18   Klein concluded that objective findings in neuropsychological testing indicated "very

19

20   ───────────────

21        [4]  "Borderline intellectual functioning" is defined by the *DSM-IV* as a full scale
     IQ of 70-84.  *DSM-IV,* at 684.  Plaintiff's full scale IQ was tested as 88, 81, 87 by Drs.

22   Larson, McKnight and Pollack, respectively.  The unexplained discrepancy in Dr.

23   Klein's definition of borderline intellectual functioning range (70-79) is noted by the
     court, but since Drs. Larson and Pollack tested Plaintiff at an IQ well above either

24   definition, the discrepancy does not affect the ALJ's analysis.

25

26        [5] Although the evidence does not support a finding of severe mental impairment,
     the ALJ properly included Plaintiff's non-exertional limitations of no "complex reading

27   or writing task" and no "detailed or complex instructions" in his hypothetical to the
     vocational expert and in his final RFC finding.  (Tr. 26, 398).  These limitations are

28   supported by substantial evidence.  *See Magallanes,* 881 F.2d at 756.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY**
**JUDGMENT, *INTER ALIA***                11

1   normal, very quick, sharp scanning and sequencing visual capabilities." (Tr. 394). He

2   testified that, based on all the medical records before the court, there were no mental

3   health impairments. (*Id.*)

4       The ALJ carefully and thoroughly discussed the medical evidence in his decision

5   and found that Dr. Pollack's findings were not supported by the medical evidence as a

6   whole. (Tr. 22). The ALJ specified that Dr. Pollack's conclusion that Plaintiff had a

7   "poor ability to respond to criticism" from psychopathology was not shown elsewhere

8   in the evidence." (Tr. 23). The record supports the ALJ's conclusions. For example,

9   Plaintiff testified that he had not been referred to mental health treatment or counseling.

10  (Tr. 375). The ALJ noted that Dr. Pollack observed Plaintiff's presentation did not

11  indicate depression, even though the test results indicated "significant depression." (Tr.

12  22). Although Dr. Pollack identified a personality disorder, NOS (not otherwise

13  specified), and opined that Plaintiff had an explosive personality that could be

14  dangerous and would have a "poor" adaptability at receiving instruction and criticism

15  from a supervisor (Tr. 294, 296), Plaintiff testified that controlling his temper in public

16  was not a major issue for him. (Tr. 374). The court also notes there are no references

17  to an explosive or dangerous personality elsewhere in the record. As the ALJ indicated,

18  Plaintiff's only lay off from work was due to lack of seasonal work. (Tr. 22).

19      Contrary to the "poor" adaptability rating he gave, Dr. Pollack found Plaintiff

20  only "moderately" limited in his ability to deal with people and was "excellent" at

21  remembering work-like procedures and understanding and carrying out short, simple

22  instructions. (Tr. 295, 297). He also opined Plaintiff was "excellent" at responding

23  appropriately to changes in a work setting, and found no limits in his ability to adapt to

24  situations requiring the precise attainment of set limits, tolerances or standards. (Tr.

25  296, 297). Because of the internal inconsistencies in Dr. Pollack's report and lack of

26  other evidence in the record that Plaintiff had a dangerous personality, the ALJ

27  legitimately discounted Dr. Pollack's interpretation of the personality test. *See*

28  *Magallanes*, 881 F.2d at 751*; Sample*, 694 at 642; *see also 96-5p* (in deciding issues

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT, *INTER ALIA***          12

1  reserved to the Commissioner, the ALJ is required to evaluate all the evidence and

2  determine to what extent medical opinions are supported by the record).  Plaintiff's

3  claims that the ALJ improperly rejected Dr. Pollack's opinions and erroneously found

4  no severe mental impairment are without merit.

5      **B.    Credibility**

6      Plaintiff contends the ALJ failed to give appropriate reasons for rejecting his pain

7  and symptom testimony, which, if credited, would establish his disability.  (Ct. Rec. 12,

8  p. 15).  The Regulations provide detailed guidance to adjudicators evaluating a

9  claimant's pain and other symptom allegations.  20 C.F.R. §§ 404.1529, 416.929.  Once

10 an underlying medically determinable impairment is established, and found likely to

11 produce pain or other symptoms, "the adjudicator must carefully consider the

12 individual's statements about symptoms with the rest of the relevant evidence in the

13 case record" in determining if the alleged symptoms render the claimant unable to work.

14 20 C.F.R.  §§ 404.1529(a), 416.929(a); SSR 96-7p.

15     In *Cotton v. Bowen,* 799 F.2d 1403 (9th Cir. 1986), the court established the

16 *Cotton* test for the analysis of subjective symptom testimony.  The *Cotton* test requires

17 the Plaintiff to (1) produce objective medical evidence of an impairment, and (2) show

18 that the impairment "could reasonably be expected (not that it did in fact) produce some

19 degree of symptom."  *Cotton*, 799 F.2d at 1407-08.  Once the *Cotton* test is met, the

20 ALJ must evaluate the credibility of the claimant and can reject the claimant's testimony

21 only with specific, "clear and convincing" reasons.  *Smolen v. Chater,* 80 F. 3d 1273,

22 1281 (9th Cir. 1996).

23     An adjudicator "may not discredit a claimant's testimony of pain and deny

24 disability benefits solely because the degree of pain alleged by the claimant is not

25 supported by objective medical evidence."  *Bunnell v. Sullivan*, 947 F.2d 341, 345-46

26 (9th Cir. 1991) (en banc); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  Although

27 credibility determinations are the province of the ALJ, the ALJ must be sufficiently

28 specific to permit the court to conclude that he did not arbitrarily discredit claimant's

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT, *INTER ALIA***        13

1   testimony. *Thomas*, 278 F.3d at 958-59; *Morgan*, 169 F.3d at 600 (specific reasons for

2   credibility findings must be articulated and "grounded in the evidence"); *see also*

3   *Bunnell*, 947 F.2d at 345-46.  "In addition, the ALJ must specifically identify the

4   testimony she or he finds not to be credible and must explain what evidence undermines

5   the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

6          The ALJ may consider the following factors when weighing the claimant's

7   credibility: reputation for truthfulness, inconsistencies either in claimant's testimony or

8   between his testimony and conduct, reported daily activities, work record, and testimony

9   from physicians and third parties concerning the nature, severity, and effect of the

10  symptoms of which claimant complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792

11  (9th Cir. 1997).  If there is no affirmative evidence that the claimant is malingering, the

12  ALJ must provide clear and convincing reasons for rejecting the claimant's testimony

13  regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

14  1998).  If the ALJ's credibility finding is supported by substantial evidence in the

15  record, the court may not engage in second-guessing. *See Morgan*, 169 F.3d at 600.

16         The ALJ found Plaintiff suffered the severe impairments of tophaceous gout with

17  intermittent flare-ups and morbid obesity, impairments which clearly satisfy the *Cotten*

18  test.  (Tr. 23).  In finding Plaintiff's subjective allegations "not entirely credible," the

19  ALJ specifically identified the testimony he found unreliable.  (Tr. 23-24).  He then

20  gave specific reasons for rejecting the testimony, based on the medical evidence,

21  Plaintiff's statements, and statements from others in the record.  (Tr. 22-24).  For

22  example, he found that Plaintiff's treating medical sources opined he was capable of

23  sedentary work.  (Tr. 24).  This finding is supported by reports from rheumatology

24  specialist Dr. Butler that Plaintiff was doing "extremely well" on his allopurinol and

25  Darvocet therapy, and Republic Medical Clinic reports that Plaintiff was capable of

26  sedentary work, his gout was under control and he was walking "quite a bit and

27  tolerating it well."  (Tr. 214, 285, 336).

28         The ALJ also found that there were reports that Plaintiff participated in numerous

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT,** *INTER ALIA*              14

1  daily activities, including visiting friends, playing catch with his nephews, carrying
2  groceries, doing yard work, doing art and building models. (Tr. 23).  These findings are
3  supported by the record, which includes statements by Plaintiff's mother and sister that
4  Plaintiff was sociable, visited friends every day, had no trouble participating in
5  conversations or activities, and was very neat with good hygiene. (Tr. 139-40, 144).  In
6  November 2001, his sister (with whom he lived) reported that he participated in family
7  activities, camped one or two times a year, drove two times per month, and his
8  "disability is not mental." (Tr. 142).   Plaintiff reported to Dr. McKnight that he
9  engaged in numerous daily activities, including taking out the trash, carrying wood,
10  cooking, doing his own laundry and keeping his own room clean.  He enjoyed drawing
11  and making models.  (Tr. 248-49).  He told Dr. Pollack in January 2002 that he walks to
12  town and back twice a week, did his household chores, visited relatives twice a month,
13  but had no hobbies or skills.  (Tr. 291).  These reports are not consistent with each other,
14  or with Plaintiff's testimony that he does not leave the house or do household chores.
15  (Tr. 367-68, 372-373).  The ALJ's interpretation of the evidence as a whole is
16  reasonable, and the court must uphold it, especially in light of other reasons given for
17  the credibility finding. *Burch v. Barnhart*, 400 F.3d 675, 680 (9th Cir. 2005) (*citing*
18  *Magallanes*, 881 F.2d at 750).

19      For example, the ALJ found Plaintiff's testimony was not consistent with the rest
20  of the record regarding his exertional limitations.  (Tr. 23).  Whereas Plaintiff stated he
21  could only lift up to 10 pounds and has to elevate his feet four hours a day, the ALJ
22  cited to the evidence mentioned above and reports that, as recently as November 2002,
23  Plaintiff was walking on a regular basis with no significant discomfort. [6]  (Tr. 24, 340).

24      The ALJ also found Plaintiff's non-compliance in his medication regime
25  indicated Plaintiff was not as disabled as he stated.  (Tr. 24).  A failure to adhere to
26  prescribed medical treatment is an appropriate factor to consider in assessing a

27  _____

28      [6] One of the reports also indicates that Plaintiff was not on pain medication
during this time. (Tr. 340).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT, *INTER ALIA***          15

1    claimant's credibility.  *See Fair*, 885 F.2d at 604; SSR 96-7p.  The evidence supports

2    the ALJ's reasoning.  Specifically, clinical notes from Plaintiff's treating physicians and

3    nurse practitioner express concern that Plaintiff did not take his medications as

4    prescribed. [7] (Tr. 161, 207-09, 222, 310, 312, 338, 340.)

5         The ALJ's specific reasons for discounting Plaintiff's pain and symptom

6    testimony are clear and convincing and supported by substantial evidence.  Plaintiff's

7    argument that this testimony should be credited fails.

8    **C.    RFC**

9         Plaintiff argues that the ALJ erred in finding Plaintiff could perform work in the

10   national economy.  He states the ALJ should have included his need to lie down and rest

11   three times a day in the hypothetical submitted to the vocational expert.  (Ct. Rec. 12, p.

12   16).  The ALJ is not bound to accept as true those restrictions presented by Plaintiff's

13   counsel.  *Magallanes*, 881 F.2d at 756.  The ALJ is free accept or reject propounded

14   restrictions, as long as they are supported by the record.  *Id.* at 757. " This is true, even

15   where there is conflicting medical evidence."  *Id*. at 756 (*citing Martinez v. Heckler,* 807

16   F.2d 771, 774 (9th Cir. 1986)).  As discussed above, the ALJ's assessment and findings

17   regarding Plaintiff's testimony and the medical opinions are supported by ample

18   evidence.  The limitations presented to the vocational expert in hypothetical "C" at the

19   hearing reflect those findings.  (Tr. 397-98, 400).  These limitations, as well as the final

20

21         [7]  The regulations warn that the ALJ must be careful to consider reasons for a
22   claimant's failure to take medications.  *SSR 96-7p.*  Here, the record indicates that in
     August 1999, Plaintiff reported not having insurance to pay for his thyroid medicine and
23   consequently failed to take it for seven months.  (Tr. 206).  This alone would not be
24   sufficient to discredit claimant's credibility. *Fair*, 885 F.2d at 603.  However, the record
     indicates that after he began treatment with Republic Medical Clinic, Plaintiff was
25   counseled by his treating nurse practitioner on the importance of taking his medicine
26   regularly.  She instructed him several times over the course of his treatment to call  the
     clinic if he had problems getting his medicine.  (Tr. 207, 212, 220, 312).  Later medical
27   reports indicate Plaintiff was not consistent in taking his medicine, even though when
28   properly taken, the medications relieved his symptoms notably.  (Tr. 285, 312).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT, *INTER ALIA***              16

RFC finding in the decision, are supported by the record.   Therefore, the vocational expert's opinion that Plaintiff could perform sedentary work as a "cashier II" and "document preparer" is supported by  substantial evidence.  Plaintiff's argument that the ALJ improperly considered the vocational expert testimony fails.

**VIII.  CONCLUSION**

The ALJ properly evaluated the medical evidence at step two in determining Plaintiff had no severe mental impairments.  He gave clear and convincing reasons for rejecting Plaintiff's pain and symptom testimony.  The ALJ's finding that Plaintiff was capable of sedentary work that exists in significant numbers in the national economy is supported by substantial evidence.   Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Ct. Rec. 11) is **DENIED.**

2. Defendant's Motion for Summary Judgment (Ct. Rec. 15) is **GRANTED**.

3. Judgment shall be entered for the **DEFENDANT**.

4. The District Court Executive is directed to enter this Order, forward copies to counsel, and thereafter shall close this file.

DATED this 29th of July 2005.


_____s/ Alan A. McDonald_____

ALAN A. McDONALD
SENIOR UNITED STATES DISTRICT JUDGE

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA***          17